# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Ricky A. Schlussler,                           Civil No. 06-cv-3801 (JNE/AJB)

                         Plaintiff,

v.                                             **Report and Recommendation on the
                                               Parties' Cross Motions
                                               for Summary Judgment**

Michael J. Astrue, Commissioner of
Social Security,

                         Defendant.

_____

Neut L. Strandemo, Esq., for Plaintiff, Ricky A. Schlussler

Rachel K. Paulose, United States Attorney and Lonnie F. Bryan, Assistant United States Attorney, for Defendant, the Commissioner of Social Security.

_____

## <u>Introduction</u>

      Ricky A. Schlussler ("Plaintiff") disputes the unfavorable decision of the Commissioner of the

Social Security Agency ("Commissioner") denying his claim for a period of disability and disability

insurance benefits and supplemental security income under Title II of the Social Security Act.  This

matter is before the Court, United States Magistrate Judge Arthur J. Boylan, for a report and

recommendation to the District Court on the parties' cross motions for summary judgment.  <u>See</u> 28

U.S.C. § 636 (b)(1) and Local Rule 72.1.  Based on the reasoning set forth below, this Court

**recommends** that Commissioner's Motion for Summary Judgment **be granted** [Docket No. 11] and

that the Plaintiff's Motion for Summary Judgment [Docket No. 8] **be denied.**

1

**Procedural History**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") in November 2003, alleging disability as of April 1, 2001 (Tr. 67-69, 87, 204-05). Plaintiff's applications were denied throughout the administrative process (Tr. 8-29, 32-47, 51, 206-11, 221-45). On March 22, 2006, following a hearing, administrative law judge ("ALJ") Diane Townsend-Anderson issued a decision finding Plaintiff was not disabled because he could perform his past relevant work (Tr. 24-29). The ALJ found that Plaintiff had the residual functional capacity ("RFC")[1] to lift and carry up to twenty pounds occasionally and ten pounds frequently; stand and walk up to six hours a day in an eight-hour workday with no more than two hours at a time; sit no more than two hours a day in an eight-hour workday; occasionally bend, stoop, crouch, crawl, and twist; and not work at heights, climb ladders or scaffolds, do over shoulder level work, operate foot pedals, or be exposed to extremes of temperature or humidity (Tr. 27).[2] Subsequently, the ALJ concluded, based on the evidence and testimony of the vocational expert, that Plaintiff was not disabled because he could still perform his past work as a cashier and buffing machine tender given his physical and mental limitations (Tr. 28). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner (Tr. 8-12). On September 21, 2006, Plaintiff sought review from this Court. Both parties thereafter filed motions for summary judgment.

---

[1] A claimant's RFC is the most the claimant can still do despite the claimant's physical and/or mental limitations. 20 C.F.R. § 404.1545.

[2] This finding by the ALJ will be referred to as a finding that Plaintiff was capable of performing a range of "light work".

**Factual Background and Medical History**

*Factual Background*

Plaintiff was born on October 15, 1956, and at the time of the ALJ's decision, was 49 years old.  He remains insured until December of 2007 (Tr. 16).  Plaintiff completed high school in a special learning process (Tr. 93, 224).  He is a single father of two children, one of whom is impaired with fetal alcohol syndrome (Tr. 225).  Plaintiff has worked as a laborer, metal buffer, and cashier (Tr. 88).  His labor jobs generally involved medium to heavy work (Tr. 109, 111-12).  His cashiering job was sedentary in lifting requirements, but required him to stand eight hours a day (Tr. 110).  His metal buffing work required him to stand or walk ten hours a day (Tr. 108).  The job also entailed medium weight lifting (Tr. 108).

*Medical History*

The record reflects that Plaintiff underwent ulnar surgery in 1995 and suffered a heart attack in 2000; however, these conditions occurred several years before Plaintiff's alleged onset of disability-November 3, 2003 (Tr. 196-202).

Plaintiff sought treatment from Bruce Richardson, M.D., for various conditions and illnesses including lower back pain, diabetes, hypertension, and pneumonia (Tr. 142-164).  On November 4, 2002, Plaintiff's blood sugar level was 300[3] because his medication ran out and he had not refilled his

---

[3] For most people, a healthy blood sugar level is a reading no higher than 160.  "Diabetes: What Should My Blood Sugar Levels Be?", http://www.medicinenet.com/script/main/art.asp?articlekey=17384 (last visited Aug. 31, 2007).

prescription (Tr. 155).  Dr. Richardson indicated that, when Plaintiff was on glucophage[4] his blood

sugar level was well-controlled (Tr. 155).  Dr. Richardson noted that Plaintiff was not experiencing any

shortness of breath (Tr. 155).  Dr. Richardson also strongly encouraged Plaintiff to stop smoking (Tr.

155).  On April 24, 2003, Dr. Richardson indicated that Plaintiff's blood sugar had been running in the

high 100 range and he recommended glucotrol[5] as additional medication to regulate his diabetes (Tr.

153).  In August 2003, Plaintiff's blood sugars were in the high 180 to 210 range and Dr. Richardson

decided to increase his daily intake of glucotrol (Tr. 152-53).  Plaintiff also noted increased fatigue with

exercise (Tr. 152).  In September 2003, Dr. Richardson indicated that Plaintiff was generally feeling

well, his blood sugar level had improved, and Plaintiff denied any chest pain or swelling (Tr. 149).

On October 1, 2003, Dr. Richardson saw Plaintiff for complaints of lower back pain, which

Plaintiff indicated experiencing intermittently since 1992 (Tr. 148).  Plaintiff denied experiencing any

radicular symptoms and indicated his pain increased with prolonged sitting and standing (Tr. 148).

Plaintiff felt that he was unable to work (Tr. 148).  Upon examination, Dr. Richardson noticed some

tenderness but negative straight leg raising and normal reflexes (Tr. 148).  Dr. Richardson scheduled

Plaintiff for a CT scan of his lower back (Tr. 148).  The CT scan on October 10, 2003,  revealed

degenerative changes in Plaintiff's spine (Tr. 160).

Dr. Richardson also completed a Dakota County Employment and Economic Assistance

---

[4] "Glucophage" is an oral antidiabetic medication used to treat Type 2 (non-insulin-dependent) diabetes.  THE PDR FAMILY GUIDE TO PRESCRIPTION DRUGS 291 (8th ed.2000). Glucophage lowers the amount of sugar in your blood by decreasing sugar production and absorption and helping your body respond better to its own insulin, which promotes the burning of sugar. Id.

[5] "Glucotrol" is also an oral antidiabetic medication used to treat Type 2 diabetes. Id.  Glucotrol controls diabetes by stimulating the pancreas to secrete more insulin.

Department Request for Adult Medical Examination form in which he indicated that Plaintiff had "an illness or injury that prevents [him] from all types of employment" (Tr. 146). Plaintiff could, however, perform any pre-employment activities (volunteer work, vocational training, literacy programs, citizenship or ESL classes, peer group networks, etc.) so long as he was not lifting over twenty pounds, bending, twisting, turning, or standing for prolonged periods of time (Tr. 146). Dr. Richardson also indicated that Plaintiff's condition would last twelve months or longer and his estimated date of return to work was unknown (Tr. 147).

On November 25, 2003, Dr. Richardson saw Plaintiff again for complaints of low back pain (Tr. 144). Dr. Richardson stated that Plaintiff brought Social Security disability forms to be completed (Tr. 144). Plaintiff had been disabled from his work as a machinist since February 28, 2003 (Tr. 144). Plaintiff told Dr. Richardson that there was no acute distress in his back and deferred examination (Tr. 144). Dr. Richardson also noted that he assisted Plaintiff in completing his forms (Tr. 144).

On December 22, 2003, Mary R. Kerr, R.N., saw Plaintiff for high cholesterol (Tr. 137-38). Ms. Kerr indicated that Plaintiff's hypertension was well-controlled (Tr. 137). She alluded to the fact that Plaintiff had a heart attack in 2000 and the cardiac risk factors included age/gender, hypertension, a low HDL[6], current smoker[7], and premature family history for coronary heart disease (Tr. 137). Plaintiff also indicated taking the medications mentioned above for his diabetes and denied any side effects (Tr. 137).

---

[6] "HDL" stands for high density lipoprotein, which transports cholesterol to the liver for excretion in bile. STEDMAN'S MEDICAL DICTIONARY 1108 (28th ed. 2006).

[7] Plaintiff smoked two packs of cigarettes a day for over 30 years, but now smokes ten to fourteen cigarettes per day (Tr. 137). Plaintiff does not consume alcohol (Tr. 137).

On February 9, 2004, Dr. Richardson examined Plaintiff for a follow-up of diabetes,

hypertension, and elevated cholesterol (Tr. 143).  Plaintiff continued to complain of lower back pain

(Tr. 143).  Dr. Richardson noted no acute distress (Tr. 143).  He also scheduled another CT scan for

Plaintiff's back (Tr. 143).  The subsequent CT scan of Plaintiff's back on February 16, 2004, showed

no significant changes from the prior CT scan–a small right lateral disk protrusion and degenerative

changes to the lumbar spine (Tr. 158).  Dr. Richardson also assisted Plaintiff fill out disability forms on

February 19, 2004 (Tr. 142).

In early 2004, two state agency physicians reviewed Plaintiff's medical record and concluded

that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk about

six hours in an eight-hour workday; and sit (with normal breaks) for about six hours in a eight-hour

workday (Tr. 166-175).  They also indicated that Plaintiff would be able to perform various postural

positions, such as stooping, crouching, and kneeling, on an occasional basis (Tr. 167).  One state

agency physician noted that Plaintiff's major disability at the time was his lower back pain, which had

been chronic for some months (Tr. 173).  The physician also indicated that his diabetes appeared to be

well-controlled with medication (Tr. 173).

On March 2, 2005, Dr. Richardson saw Plaintiff for several problems (Tr. 180).  He indicated

that Plaintiff was "disabled"due to low back pain (Tr. 180).  Dr. Richardson also indicated that Plaintiff

brought more disability forms to be completed (Tr. 180).  Upon examination, Dr. Richardson reported

no significant clinical abnormalities (Tr. 180).  In April 2005, Dr. Richardson saw Plaintiff for the same

problems from March 2005 (Tr. 179).  Plaintiff informed Dr. Richardson that he had been in a car

accident a month earlier and strained his lower back (Tr. 179).  There again, Dr. Richardson reported

no significant clinical abnormalities other than back tenderness; he reported negative straight-led raising and normal reflexes (Tr. 179).  On November 10, 2005, Plaintiff brought in more disability forms to be filled out (Tr. 176).  Dr. Richardson, for the second time, noted that Plaintiff has been "disabled" due to low back pain (Tr. 176).  Dr. Richardson's examination revealed no acute distress other than a light limitation of abduction in Plaintiff's shoulders bilaterally (Tr. 176).

Finally, in November 2005, Dr. Richardson completed a form in which he indicated that Plaintiff would not be able to return to work in the foreseeable future (Tr. 186).  He listed Plaintiff's permanent physical limitations as lifting less than twenty-five pounds and no bending, twisting, and turning activities (Tr. 186)[8].  On December 15, 2005, Dr. Richardson indicated in a letter that Plaintiff was still "disabled" due to chronic low back pain, but was also unable to sit or stand for more than fifteen minutes at a time (Tr. 20).

**Testimony at Administrative Hearing**

*Plaintiff's Relevant Testimony*

Plaintiff, represented by counsel, testified that he was unable to work due to pain in his back, wrist, and fingers (Tr. 227).  Plaintiff also indicated that he often experienced shortness of breath when he walked (Tr. 227).  Plaintiff stated that he was able to walk a block or two for exercise, but it depended on the amount of discomfort (Tr. 229).  Plaintiff's diabetes caused his feet and ankles to swell (Tr. 228).  Plaintiff would sometimes go down to the river with a friend and walk, but many times

---

[8] Dr. Richardson offered the same opinion based on Plaintiff's physical and mental limitations on July 13, 2005, only Dr. Richardson regarded Plaintiff's limitations as "temporary" at that time instead of "permanent" (Tr. 189).

he was unable to walk at all because of his back and feet pain (Tr. 230).  However, Plaintiff did admit

the he was still smoking one pack of cigarettes a day (Tr. 231).

Plaintiff testified that he lived with his two daughters who were ages 12 and 13 (Tr. 226).  He

stated that he did most of the everyday chores (Tr. 228), but was affected by fatigue and shortness of

breath when carrying groceries up and down steps (Tr. 227).  He was only able to stand on his feet

about five to ten minutes when cleaning dishes before he had to sit down (Tr. 232).  He tried to do

dishes and vacuuming, but when his back bothered him he would ask his youngest daughter to help (Tr.

233).  Typically, Plaintiff could only drive 25 to 30 miles before he needed to stop and walk around a

little before driving again (Tr. 233).

To alleviate the back pain, Plaintiff was given pills to keep the muscles relaxed (Tr. 230).

Plaintiff usually laid on his couch or bed while the children were at school to help with the back pain

(Tr. 230).  Plaintiff stated the physical therapy for his back was too much (Tr. 231). Doctor Richardson

did offer the option of back surgery, but also advised Plaintiff that there was only a 10% chance that his

back would be all right (Tr. 234).  Plaintiff also indicated that if he was subject to heavy lifting his wrists

would throb and swell (Tr. 231).  Plaintiff also denied experiencing any side effects from his

medications (Tr. 231).

### *Medical Expert's Relevant Testimony*

Andrew Steiner, M.D., testified at the hearing (Tr. 60, 235).  Dr. Steiner discussed the medical

evidence in the record (Tr. 235).  He testified that Plaintiff's impairments did not meet a listed

impairment found at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 236).  Dr. Steiner opined that Plaintiff

could perform the equivalent of light work with limited bending, twisting, stooping, kneeling, crawling,

8

and crouching (Tr. 236).  Based on the record, Dr. Steiner could not suggest any hand limitations (Tr.

236).  Dr. Steiner indicated the Plaintiff would certainly need a break after two hours of standing (Tr.

239-40).  Dr. Steiner also reviewed Dr. Richardson's notes regarding Plaintiff and his ability to work

(Tr. 237).  Dr. Steiner questioned Dr. Richardson's opinion that Plaintiff would be precluded from

performing all work (Tr. 237).

### *Vocational Expert's Relevant Testimony*

Steve Bosch, a vocational expert, completed a form describing Plaintiff's past work as a

cashier and buffing machine tender as light, unskilled labor (Tr. 135).  The ALJ asked Mr. Bosch to

consider a hypothetical individual with Plaintiff's vocational profile, impairments, and limitations (lifting

and carrying 20 pounds occasionally and 10 pounds frequently; no heights, ladders, scaffolding, over

shoulder work, temperature or humidity extremes, or foot pedal manipulations; no more than two hours

of standing; and only occasional bending, stooping, crouching, crawling, twisting, and climbing)(Tr. 59,

241).  Thereafter, Mr. Boasch stated that Plaintiff could perform his past work as a cashier or buffing

machine tender (Tr. 241).  Mr. Bosch further testified that the hypothetical individual could perform a

significant number of jobs in the national economy (Tr. 241-42).  However, when the ALJ asked Mr.

Bosch to assume a similar individual as stated above, but due to back pain and shortness of breath and

fatigue would be absent from the workplace more that two times a month, Mr. Bosch replied that there

would not be any work for that individual in the regional or national economy (Tr. 242).

### *Appeals Council Evidence*

After the ALJ issued her decision, Plaintiff submitted evidence to the Appeals Council.  The

additional evidence consisted of a letter dated April 6, 2006, from Dr. Richardson, Plaintiff's treating

physician, indicating that Plaintiff was unable to sit or stand for more than fifteen minutes at a time, he

had experienced fatigue since May 20, 2003, and he was unable to work forty hours a week (Tr. 15-

20, 217).

**<u>The ALJ's Findings and Decision</u>**

As previously stated, on March 22, 2006, the ALJ issued her decision denying Plaintiff's

application for DIB and SSI (Tr. 21-29).  The ALJ followed the sequential five-step procedure as set

out in the rules. <u>See</u> 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a).  The Eighth Circuit has summarized

these steps as follows: (1) whether the claimant is currently engaged in "substantial gainful activity"; (2)

whether the claimant suffers from a severe impairment that "significantly limits the claimant's physical or

mental ability to perform basic work activities"; (3) whether the claimant's impairment "meets or equals

a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without

regard to age, education, and work experience); (4) whether the claimant has the RFC to perform his

or her past relevant work"; and (5) if the ALJ finds that the claimant is unable to perform the past

relevant work then the burden is on the ALJ "to prove that there are other jobs in the national economy

that the claimant can perform." <u>Fines v. Apfel</u>, 149 F.3d 893, 894-95 (8th Cir. 1998).

The ALJ determined that Plaintiff met the requirements for the first two steps of the disability

determination procedure.  The ALJ found that Plantiff had not engaged in substantial gainful activity (Tr.

26).  At step two, the ALJ found that Plaintiff's impairments of lumbar degenerative disc disease with

chronic lower back pain, diabetes mellitus, coronary artery disease with a history of myocardial

infarction, angioplasty, and stent placement, and history of cubital tunnel syndrome/ulnar neuritis were

considered "severe" based on the requirements in the regulations (Tr. 26).  At step three, the ALJ

10

determined that Plaintiff's impairments did not meet or equal one of the listed presumptively disabling impairments (Tr. 27).

At step four, the ALJ determined that Plaintiff had the following RFC: (1) lift and carry up to 20 pounds occasionally and 10 pounds frequently; (2) stand and walk up to six hours a day, no more than two hours at a time; (3) sit about two hours per day; (4) occasionally bend, stoop, crouch, crawl, and twist; and (5) cannot work at heights, climb ladders or scaffolds, do over shoulder level work, operate foot pedals, or be exposed to extremes of temperature or humidity (Tr. 27).

Based on the RFC and the testimony of the vocational expert, the ALJ determined that Plaintiff could perform his past relevant work as a cashier and buffing machine tender (Tr. 28). Accordingly, the ALJ found that Plaintiff was not disabled under the regulations imposed by the Social Security Act.

**Standard of Review**

Review by this Court is limited to a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." Gavin v. Heckler, 811 F.2d 1195, 1199 (8th Cir. 1987). "'Substantial evidence on the record as a whole,' . . . requires a more scrutinizing analysis." Id. "Substantial evidence" is less than a preponderance of evidence, and constitutes such relevant evidence as a

reasonable mind might accept to support a conclusion. Richardson, 402 U.S. at 401.

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). The Court should not reverse the Commissioner's finding merely because evidence may exist to support the opposite conclusion. Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994); see also Woolf, 3 F.3d at 1213 (the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding). Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Gavin, 811 F.2d at 1199.

The claimant bears the burden of proving his or her entitlement to disability insurance benefits under the Social Security Act. See 20 C.F.R. §§ 404.1512(a), 416.912(a); Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991). Once the claimant has demonstrated he or she cannot perform prior work due to a disability, the burden of proof then shifts to the Commissioner to show that the claimant can engage in some other substantial, gainful activity. Martonik v. Heckler, 773 F.2d 236, 239 (8th Cir. 1985).

**Discussion**

*Dr. Richardson's Medical Opinions*

Plaintiff asserts that the ALJ failed to accord the proper weight to the opinions of Dr. Richardson regarding Plaintiff's functional limitations. However, an opinion rendered by a claimant's treating physician is not necessarily conclusive. Bentley v. Shalala, 52 F.3d 784, 785-86 (8th Cir. 1995). An ALJ may discount a treating physician's medical opinion when the treating source's statements are conclusory or unsupported by medically acceptable clinical or diagnostic data. Rogers v.

12

Chater, 118 F.3d 600, 602 (8th Cir. 1997).  In this case, Dr. Richardson indicated after several

examinations that Plaintiff was "disabled" (Tr. 20, 176, 180).  For example, on December 15, 2005,

Dr. Richardson stated that Plaintiff was "disabled" due to chronic back pain and was unable to sit or

stand for more than fifteen minutes at a time (Tr. 20).  However, Dr. Richardson neither provides an

explanation for how he arrived at this physical limitation for Plaintiff nor cites any objective evidence in

support of this limitation.[9] See e.g., Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004)("[L]ack of

objective medical evidence is a factor an ALJ may consider").  Thus, the Court agrees with Defendant

that because Dr. Richardson's were conclusory and subjective the ALJ properly gave his findings no

significant weight.

      Moreover, the conclusory medical opinions of Dr. Richardson are not dispositive because the

ultimate issue of disability is reserved for the Commissioner. See e.g., Ellis v. Barnhart, 392 F.3d 988,

994 (8th Cir. 2005)("A medical source opinion that an applicant is 'disabled' or 'unable to work,'

however, involves an issue reserved for the Commissioner and therefore is not the type of 'medical

opinion' to which the Commissioner gives controlling weight."); see also 20 C.F.R. §§ 404.1527(e)(1),

416.927(e)(1)(Commissioner is responsible for deciding the ultimate issue of disability and a statement

by a medical source that you are "disabled" or "unable to work" does not mean that claimant will be

found disabled).  Dr. Richardson states that Plaintiff could perform activities that involved lifting no

more than twenty pounds, bending, twisting, turning, or engaging in prolonged standing (Tr. 146).  In

the same examination notes, Dr. Richardson indicated that Plaintiff's impairments prevented him from

---

[9] As the ALJ properly noted in addressing this letter, Dr. Richardson's suggested limitations for
Plaintiff were not necessarily indicative of someone who could not perform any work (Tr. 28).

13

"all types of employment" (Tr. 146). As stated above, a medical doctor can comment on claimant's ability to perform work activity, but is not qualified to comment on his vocational ability to perform work. Therefore, the ALJ was not required to give significant weight to Dr. Richardson's opinion that Plaintiff could not perform any work.

### The April 6, 2006, Letter

Plaintiff next argued that the ALJ "disregarded" the comments made in an April 6, 2006, letter where Dr. Richardson indicated that Plaintiff was "disabled" due to his back pain and fatigue, was unable to sit or stand for more than fifteen minutes without experiencing back pain, was unable to work forty hours per week, and would need to take frequent time off (Tr. 19). See Pl.'s Mem. 7-9 [Docket 9]. Contrary to Plaintiff's assertion, the ALJ disregarded the letter because it was submitted to the Appeals Council after the ALJ made her decision. Nonetheless, when evidence that was not before the ALJ is submitted to the Appeals Council, a reviewing court first considers whether or not the ALJ's decision is supported by substantial evidence on the basis of the record. If substantial evidence supports the ALJ's decision, the Court then considers whether the evidence submitted to the Appeals Council is so significant that it overcomes the substantial evidence supporting the ALJ's decision. See Richmond v. Shalala, 23 F.3d 1441, 1444 (8th Cir. 1994); Riley v. Shalala, 18 F.3d 619, 622 (8th Cir. 1994).

In this case, while the April 6th letter further supports Dr. Richardson's opinions regarding Plaintiff's physical state, it does not add new information to the record that would have resulted in a different decision. First, the ALJ already addressed Dr. Richardson's opinion that Plaintiff could not stand or sit for more than fifteen minutes at a time (Tr. 28). Second, Dr. Richardson's progress notes

did not appear to consistently document Plaintiff's complaints of fatigue (Tr. 28, 143-44, 148-49, 176,179-80) and the ALJ reasonably gave this evidence no significant weight.[10]  The ALJ also noted that Plaintiff's complaints of a disabling condition were undermined by his level of activity which included being the sole caretaker of two children, helping them with their homework and attending their school functions, doing the cooking, laundry, and cleaning (Tr. 226, 228); his failure to follow his physician's recommendation to stop smoking (Tr. 155, 231); and his denial of side effects from his medication (Tr. 231). See e.g., Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001)("getting up, eating, reading, cleaning the house, making the bed and doing dishes with the help of her husband, making meals, visiting with friends, and occasionally shopping and running errands" undermined Dunahoo's complaints); Sultan v. Barnhart, 368 F.3d 857, 863 (8th Cir. 2004)("Sultan's own testimony established that his medications alleviated his symptoms without significant side effects [and] that he had a normal range of daily activity....").

Finally, Plaintiff indicated that Dr. Richardson was the only person on record who substantially addressed Plaintiff's ability to sit and stand and his ability to work each week. See Pl.'s Mem. 8 [Docket No. 9].[11]  Assuming *arguendo* that the ALJ was presented with  the April 6, 2006, letter and gave it no significant weight, the Court would conclude that the letter was conclusory, subjective, and

---

[10] An ALJ's credibility finding is entitled to considerable deference. See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996)("the court will not substitute [its] opinion for that of the ALJ, who was in a better position to assess [the claimant's] credibility.").

[11]  The Court would note that in addition to Dr. Richardson, both Dr. Steiner, the testifying medical expert, and two state agency physicians commented on Plaintiff's physical condition and his ability to perform work activity.

this Court would allow the ALJ to discount the medical opinions stated in the letter.  Similar to the

progress notes mentioned above, Dr. Richardson provides no explanation for how he derived Plaintiff's

limitation to sit or stand more than fifteen minutes and cited no objective evidence in support of the

limitation.  Plaintiff's ability to work a forty hour work week is also a determination for the ALJ, not the

treating physician.  Therefore, since the additional evidence submitted to the Appeals Council would not

have changed the decision of the ALJ, remand to consider this additional evidence is not warranted.

See e.g., Riley, 18 F.3d at 623.

**Conclusion and Recommendation**

        The Court agrees with Defendant that the ALJ's RFC determination is sustainable.[12]  The

opinions of Dr. Steiner and the two state physicians provided substantial evidence for the ALJ's finding

a range of light work.[13]  Dr. Richardson's medical opinions and his April 6, 2006, letter were accorded

proper weight by the ALJ.  Substantial evidence supports the ALJ's finding that Plaintiff's allegations of

disability through Dr. Richardson were not fully credible and that he could perform a range of light

work.  Accordingly, the Court **recommends** that Commissioner's motion for summary judgment

[Docket No. 11] **be granted** and the Plaintiff's motion for summary judgment [Docket No. 8] **be**

**denied.**

_____

        [12] Plaintiff does not take issue with the ALJ's finding that he could perform his past work as a
cashier and buffing machine tender.

        [13] While Plaintiff undoubtedly would have weighed the evidence differently, that does not render
the ALJ's interpretation unreasonable. See Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir.
1994)(substantial evidence review embodies a "zone of choice within which the [Commissioner] may
decide to grant or deny benefits without being subject to reversal on appeal").

Dated:   August 31, 2007

 s/ Arthur J. Boylan

Arthur J. Boylan
United States Magistrate Judge


**Notice**

      Pursuant to Local Rule 72.2 (b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **September 14, 2007.**